h KIRBY, Judge.
Clifton B. Batiste was charged by bill of information on May 7, 1999, with forcible rape, in violation of La. R.S. 14:42.1, and with aggravated crime against nature, in violation of La. R.S. 14:89.1. At his arraignment on May 12th he pleaded not guilty. Probable cause was found and the motion to suppress the identification was denied on August 3rd. After trial on August 10th, twelve-member jury could not reach a verdict on the forcible rape charge and a mistrial was declared on that count, and the jury found Batiste guilty of the lesser offense of attempted aggravated crime against nature.[1] He was sentenced on August 30th to serve five years at hard labor. The defendant’s motion for reconsideration of sentence was denied, and his motion for an appeal was granted.
At trial Detective Easterlynn McKendall of the Sex Crimes Unit testified that she investigated the sexual assault case in which Clifton Batiste was named by the victim as the assailant. On that basis, the detective prepared a photographic line-up which she showed to the victim who selected the defendant’s picture and named him as the rapist. Batiste was arrested, and a search of his residence was ^conducted after a search warrant had been procured. A sweatshirt and bed linens were seized. The linens were turned over to the crime lab for testing.
Dr. Julie Bragg, who was working in the pediatric emergency room at University Hospital on the night of March 13, 1999, testified that she examined the thirteen-year-old victim, VJ.[2] Dr. Bragg took the patient’s history and recorded that VJ
complained that Clifton Batiste put his penis in her private area twice and her backside twice and also tried to stick his fingers inside her private area twice, and then after her incident when she wiped her private area, there was blood on the tissue.
In the physical examination of VJ, the doctor found four scrapes or scratches on her right breast, three abrasions on her *371 hymen, and abrasions on her anus. The doctor testified that the abrasions were consistent with trauma. Under cross-examination, she said that it was not very likely that the abrasions were caused by voluntary sex. No secretions were found on VJ; however, she reported taking a bath after the incident.
Officer Robert White testified that on March 13th about 6:30 p.m. he interviewed the victim who appeared shocked and very nervous when he spoke with her. She was frightened and “it took her a while to really tell me what ... happened.” Officer White found her story consistent, and when she described what happened to her, he contacted the Sex Crimes Unit. A detective from that unit met VJ and him at the hospital and took over the investigation.
Ms Madeline Collins, an expert in the field of serology, testified that she tested the bed linens seized from the defendant’s home. She found seminal fluid Ron a bed sheet, but she could not tell how long it had been there. On the blanket she found hair belonging to the victim.
Ms Josette Nouveau testified that the victim and her daughter are friends. On March 12th VJ arrived at the Nouveau’s apartment in Clifton Batiste’s car; he was driving and he was alone in the car. When she was ready to go home, Batiste picked her up. The next day when VJ returned to the Nouveau’s house, she was very upset. She was crying and bleeding; she claimed she had been raped. Ms Nouveau called 911 and reported the incident. She later spoke with Officers White and McKendall.
Ms Beverly Nouveau, the thirteen-year-old friend of the victim, testified that she has been friendly with the victim for two years while they were in the sixth and seventh grades. On March 11th Beverly remembered talking on the telephone with VJ who was at Batiste’s house. During the conversation, Beverly heard Batiste ask who was on the telephone and when VJ told him it was her friend, he “jerked the phone from her and was talking nasty talk on the telephone.” When asked specifically what Batiste said, Beverly replied, “He told me that he was going to put hisself [sic] in me.” On March 12th VJ and Beverly had plans to go to a movie, but they did not go; instead they played at Beverly’s house. Later that evening, VJ called Clifton Batiste to pick her up. The next time Beverly saw VJ was on Saturday, March 13th, when VJ arrived at her house “crying and shaking.” VJ said that the defendant made her do “grown up things.” She described the events: “he threw her on the bed, hit her o[sic] the jaw and she had bruise [sic] and was bleeding,” and “[h]e was on top of her forcing him in her.” Beverly saw blood on VJ’s arms and wet stains on the jeans she was wearing. When VJ spoke with Beverly’s mother, she told her the same story.
|4VJ, who was fourteen at the time of trial and thirteen at the time of the incident, testified that she has lived with foster parents for two and one-half years. VJ stated that she left their house on a Monday to go to a sister’s house. There she met Clifton Batiste for the first time; he was with her sister. She spent that night at her sister’s house, and the next day she went to Clifton Batiste’s apartment in the St. Bernard Project with her sister. VJ’s sister told her to stay at Batiste’s place “until things died down,” referring to the fact that VJ had not called her foster parents to tell them where she was. VJ said she stayed at Batiste’s apartment several days because she was afraid and “didn’t know what to do.” The first few days other people were also staying at the apartment. VJ slept in Batiste’s daughter’s bedroom. VJ reported that she *372 was talking to her best friend, Beverly Nouveau, on the telephone on Thursday when Batiste took the receiver and began “talking nasty.” On Friday after spending time with Beverly, VJ called Clifton Batiste to pick her up rather than her foster mother because she felt she would get in trouble if she called her foster mother. Back at his house, VJ went to Batiste’s daughter’s room to watch television but the set was not working properly, and so she went into his room. He said, “You can’t live nowhere for free.”
Batiste then told her to take off her clothes; the second time he said it she complied. He pushed her onto the bed so that she was lying face down. He “put himself’ into her anus. She cried and said she had to go to the bathroom. She found she was bleeding from her “behind” when she went into the bathroom. He came into the bathroom and told her if she did not “do it the sex way, there was oral sex.” Batiste then “stuck his penis inside of my mouth and started moving my head back and forth.” He left the bathroom first and told her to come back to his room. She followed him because she was afraid not to do what he said. Once in |Bthe bedroom, he pushed her on the bed on her back and raped her vaginally. She cried and told him she had to go to the bathroom again, but he told her she did not need to go to the restroom, “it’s just my dick inside of you.” VJ said that after Batiste ejaculated, she took a bath. He was calm afterward and spoke to her sister on the telephone. When VJ got on the telephone, she did not tell her sister what had happened, and her sister told her to go to Beverly’s house on Saturday and the sister would pick her up on Sunday. VJ slept in Batiste’s daughter’s room that night. The next morning he gave her bus fare to go to Beverly’s house in the Iberville Project, and VJ caught the bus to get there. She told Beverly and her mother what had happened to her, and they called the police. Her foster mother picked her up when she was released from the hospital and Juvenile Bureau. Later VJ met with Detective McKendall and selected Clifton Batiste’s picture from a set of pictures. VJ also wrote out a statement of what happened to her for the detective. Under cross-examination, VJ said that Batiste never actually slapped her although he “made a slap towards” her.
Tashika Hayes, Batiste’s girlfriend, testified that he picked her up on March 12th and they went to his apartment where Hayes’s brother and VJ were staying. Ms Hayes slept in Batiste’s bed with him, and VJ slept in the other bedroom. The next day Batiste dropped VJ off at Beverly’s house. Ms Hayes witnessed no inappropriate behavior between Batiste and VJ.
In a single assignment of error, the defendant now argues that the trial court erred in sentencing him for the offense of aggravated crime against nature when he was found guilty of attempted aggravated crime against nature. The defendant is correct. At the sentencing hearing on August 30, 1999, the trial court stated, “In reference to the sentencing on the aggravated crime against nature, it is the 18sentence of this Court Mr. Batiste that you serve FIVE (5) Years in the Department of Corrections with credit for any time served.”
Because the trial court sentenced the defendant to a more serious offense than warranted by the jury’s verdict, we vacate the sentence and remand the case for re-sentencing.
Accordingly, the conviction is affirmed and the sentence is vacated. The case is remanded for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.

. The state entered a nolle prosequi as to the forcible rape charge on October 6, 1999.

. The victim is referred to by her initials rather than her name because of the nature of the offenses.